The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-1543 Personal Web Technologies v. Google. Mr. Hadley, whenever you're ready. Thank you, your honor. May it please the court. In our step one, courts look at the focus of the claims, not whether the invention can be distilled into a single sentence abstract idea. The claims are eligible when they do two things under this court's precedence. First, they have to focus on a specific asserted improvement in computer or network platform capabilities or functionality and not instead on a process or system that qualifies as an abstract idea for which computers are simply invoked merely as a tool. Second, they need to recite a specific means or method that solves a problem in an existing technological process. That does not mean that the claims have to recite how a technological solution is captured in the patent claims. Mr. Hadley, this is Judge Lori. Go ahead, Judge Lori, please. Thank you, Chief. Mr. Hadley, boil down to their essence. When you look at the claims, they recite receiving, storing, deleting, and controlling access to data. Those are all abstract ideas. I don't think we dispute that you can take these claim elements and break them down into individual abstract ideas, but in Diamond v. Deere, the Supreme Court said that's not the analysis. The analysis looks at the claims as a whole. In fact, the claims here build on one another. The first step is calculating the unique identifier for each data in a data item. Then the next elements talk about comparing a request for a particular data item against all the other data items in the data system. That was the particular element that this court focused on in its prior personal web decision in finding that the claims at issue were novel over the prior art asserted. The issue, as you said, was novelty or unobviousness. Those are different issues. We have eligible subject matter here, not a question of novelty or cleverness or non-obviousness. That's true. In the prior opinion, this court actually explained the problems that arise in conventional data processing systems when using traditional naming conventions and then described the claim apparatus for resolving that problem using the content-based identifiers to determine whether a particular data item is present on the system for various purposes. I'm a little confused. There are three steps recited. If we were to conclude that with respect to at least each individual step, we've got cases that really are on point that establish that each individual step is an abstract idea. If you take that as a given, just as a hypothetical, do you have an argument that this ordered combination somehow makes the combination of three abstract idea steps non-abstract? Do you have an argument about that with respect to these particular steps? I do. The question, again, goes to whether this ordered combination improves computer network platform functionality or it's simply an abstract idea and invokes the computers as a tool. In this case, they do improve computer functionality. As this court recognized, the prior systems without using conventional names and file management systems had a problem with data having the same name, having different data file management systems, and as networks grew larger and larger, this created a huge problem in locating, accessing, and managing data. With this invention, essentially completely revamping the naming system and storage location systems for computer networks provided a functional improvement that allowed things like the Internet to flourish. Counsel, this is... Go ahead, Judge Ray. Counsel, let me ask you this question. In content extraction and transmission versus Wells Fargo, we held that the claims were ineligible, and we kind of laid it out in a simple explanation. We said, number one, they collect data, number two, they recognize certain data within the collected data set, and number three, they store that recognized data in a memory. When I superimpose those three conclusions in that particular case, what we have here, it's almost identical. I'm having a hard time seeing how you're going to get out of this. Well, the key difference in those cases, in content extraction in particular, was that there was no functional improvement to the computer network. It simply took what was a preexisting conventional process and applied a computer to it with those known functions. In this case, you're not arguing that you have a specialized computer or that the application and the steps result in a specialized computer, correct? No, we are not. What we're arguing is that there is a documented and fundamental improvement to the network platform itself by substituting the use of content-based identifiers for subjective names and locations in a data processing system. That improves the network itself, and it's very similar to what this court held in packet intelligence versus net scout systems not too long ago. In fact, those types of claims had very much the same sort of determining and accessing that this particular patent has. Are you arguing that the claims are directed towards the improvement of Internet technology? Yes, we are arguing that. And very much like packet intelligence, where the claims were eligible because they met a challenge unique to computer networks by identifying disjointed connection flows in a network environment. Well, Mr. Hadley, this is Judge Proust. I mean, the concern or the question I'm having with your response to Judge Reyna is firstly, and I think Google points this out in its brief, that the alleged improvement is not recited in the claim. So putting that aside, we've got a case called Secure Mail, and they talk about improving the efficiency of performing an abstract idea by using technological tools does not constitute a technological improvement. Are you familiar with that? That was in our opinion in Secured Mail. I am, Your Honor. So those are the two rebuttal points to what you've been telling us. So why am I wrong? Because in Secured Mail, there was no improvement to the mail system itself. It was simply computerizing the mail system by affixing a barcode on letters and packages and then connecting that to a computer in a conventional way. Here, you're not taking computers and using them in a conventional way. You invented or the inventors here came up with an entirely new naming and storage convention that avoided the problems that were inherent in prior art conventional systems where you had diverse networks, diverse file management systems, and subjective names and particular data items could be given the same names. And it had very real practical consequences. In fact, it invented a whole field called content-addressable storage. And the real and tangible result of this is that… Counsel, this is Drayne, but your claims are not directed towards resolving this diversity of files or the file management systems that existed in the Internet. So it seems to me, since the claims are not directed to that, then it seems to me that your argument is that this is a claim to advance. Is that right? It is a claim to advance, although I would disagree that the claims are not directed on it. Again, we look at the focus of the claims and the claims don't need to recite how the solution is captured, but instead the specific means or methods. And here, if you look at the claims in the ordered combination, it does say exactly how you do it by giving all of the data items in the network, regardless of size, a content-based name and then comparing one content-based name against all of the others in the network and then express… It seems to me that if you go down that route, what you're claiming is all data management in the Internet, and that is horrendously broad. Well, it really isn't, because…and that is not what we're claiming, data management. What we're claiming is the use of content-based identifiers compared against the plurality of other identifiers in the entire network to perform…using the results to perform the operations. And all you have to do is look at Woodhill, the prior art that this patent builds on top of, and see that there are other ways to do it. For example, in Woodhill, you knew the name of the…you found the file conventionally with its name and you knew its location, and then what you could do was not back up a particular piece of that file that you had on your computer if it was already on another computer. And what this invention does is it expands that technology considerably so that you don't have to, for example, back up a piece of data, not just if it is in the exact same location in the exact same file that you previously backed up, but whether it is anywhere in the entire network, anywhere. And that's a significant improvement. I'm into my rebuttal time. Yes. Why don't we hear from Ms. Freeland and we'll reserve your rebuttal time. Thank you. Ms. Freeland? Good morning. Good morning. Yes. May it please the Court. My name is Cindy Freeland, and I'll be arguing this morning on behalf of my clients, E&C and VMware, and our co-appellees, Google and Facebook. We believe the District Court correctly held that the idea of using content-based identifiers to manage data in a computer system is abstract, and that implementing that idea with a generic hash function provides no inventive concept. Your Honors highlighted a number of the cases that are very similar from this Court, including content extraction and secured mail. I'd also highlight the Intellectual Ventures v. Symantec case and the Smart Systems v. Chicago Transit case, as well as Bridge and Post. All of these cases involved generating an identifier based on a hash function or some other mathematical algorithm, comparing that identifier to other values, using the result of that comparison to either deny access to a resource or to delete unwanted content. Again, exactly the same three-step process as personal web claims here, and ineligible for the very same reason. I'd like to turn first to the issues raised with respect to ALICE Step 1. To begin with, there's no dispute here on what the claimed advance is, because the District Court accepted personal web's characterization of the claim. As Your Honors recognized in your question, the claimed advance was simply using a content-based identifier to perform a standard file management function. The Court has long held, in a long line of cases, that claims like these are abstract. What about your friends' argument, as I understand it, that there are efficiency gains for the networks in the uses they've claimed in this patent? Why doesn't that give them something beyond what our cases have held? I think the challenge to their argument is they have to show that there is an improvement to the functionality of computers, and they haven't done that. Instead, if anything, these claims just improve the abstract process. They're not arguing that they have or they achieve a specialized computer. What they're arguing is that they resolved an Internet-based problem. That problem was a diversity in the information that existed, the data that existed in the Internet. They resolved that diversity. Right. I would say, consistent with the cases, that is an improvement to the abstract process and not to the functionality of the computers. Our cases do recognize that you can have claims that are directed to an improvement in the technology of the Internet. That could be patent-eligible. Absolutely, if you are improving the functionality of the computer or the network and not simply improving the abstract process. I would highlight that in three of the cases cited in our brief, the three we've focused on, ID versus Symantec, smart systems versus Chicago, Bridge and Post, all three of these involved very, very similar claims to improving the functionality of a computer and a network. All three of these cases, Mr. Hadley has focused on the use of hash-based identifiers. In all three of these cases, the court addressed the claim that used a hash-based identifier for the same purported efficiencies. In the smart system case, there was a hash identifier for bank cards that purportedly led to the same system improvement. In Bridge and Post, a persistent identifier for a device that was a hash that was used to implement targeted marketing. Counselor, can you address your opponent's claim, as I see it, that what they have improved is network functionality? If you have a diverse means in which data is managed, is located, is identified, and you have many parties that are applying their own way of doing this, they claim that they resolved that diversity of data management and that that improved network functionality. That seems to get a little bit close to the edge of being PAN eligible. Well, I would say those are exactly the arguments that this court rejected in ID versus Symantec, in smart systems versus Chicago Transit, and in Bridge and Post, because as the court concluded in all those cases, the claimed improvement wasn't to the functionality of the computer. It wasn't a specific implementation. I'm not talking about improving the functionality of a computer. They've already said that that's not what the claims are directed to. They're saying that the claims are directed to improvement network functionality. Right, and I think what they're essentially saying, though, is that it's an improvement in the abstract process. They're saying that these hash-based identifiers improve the process of managing data. And as this court has held many times, merely adding computer functionality to increase the speed or efficiency of a process is not enough for patent eligibility. And I think that's all that's happening here. They're adding computer functionality to or using computer functionality to try and more efficiently perform this abstract process of locating data in a network and of controlling access to data in a network. And I think the library analogy that we've highlighted in our brief underscores this. You know, librarians have been using content-based identifiers to identify, locate, and manage library books for decades. And these claims aren't – you know, all the claims are doing is adding computer functionality to try and increase the speed and efficiency of what is otherwise an abstract process. Is this invention the Dewey Decimal System for internet network functionality? I think it is akin to a Dewey Decimal System for a network. I mean, it's using content-based identifiers to identify, locate, and manage content. You know, these hash-based identifiers, the patent claims, makes it easier to see where things are located, to find things in a network, to manage number of copies. So, absolutely, we see it as no different than a computerized implementation of the abstract idea. So, let's say you have five libraries, and the librarian in each one of those libraries applies a different classification system for identifying and locating material in the library. Then somebody comes along and creates a system that clears the diversity found in the five different systems and comes up with one system to where you can go to one library to the next and find and identify the materials using one system. Isn't that an improvement of network functionality, of internet network functionality? Well, I would say that is exactly the Dewey Decimal System. The Dewey Decimal System is a single…the idea was to have the same organization process, the same naming process across libraries and across books. So, it is…you know, certainly, a Dewey Decimal System improves the libraries, but it's an improvement to the abstract process of identifying and locating and managing books. And, you know, here, the content-based identifiers perform the same function. And, again, I'd highlight that, you know, that efficiency gain from these content-based identifiers that Personal Web focuses on, those were exactly the same arguments that were made in the Symantec case, in the Smart System case, in the Bridge and Post case. In each of those cases, the patent owners focused on the use of a mathematically-based or hash-based identifier to make more efficient the process of managing data. And in every one of those cases, the court found that, you know, to the extent there was any improvement, it was an improvement to the abstract process and not an improvement to network or computer functionality. And I'd also highlight…you know, so we see no improvement here to…no technical improvement. And as Judge Prost and Judge Lori both recognized, in addition to that problem, the purported improvements that Personal Web is focused on are just nowhere captured in its patent claims. And I think you can see that, for example, by looking at Claim 24 of the 310 patent, which appears on the Appendix 379. This is the claim that the parties focused on quite a bit in their brief. And if you were to look at this claim, you know, none of the cited technical improvements that Personal Web claims are in this claim. Well, let me ask you about that, because on that argument, are you saying that they need…the claims need to recite the words, this improves network functionality? Or is it sufficient that the operations that are stated in the claims will simply have that effect? I think the latter, Your Honor. The question is whether implementing this claim would achieve the purported improvement. And if you were to look at the… Excuse me a minute, but doesn't the specification discuss improvements that are premised on those claim steps? Well, no. I mean, the…if you were to look at these…the particular claims, I mean, the question is, is the structure in this claim accomplishing the goals that the specification set out? And I would say no. I mean, if you were to look at Claim 24, for example, Claim 24, the first limitation, Limitation A, is simply a whole lot of words for the idea of using one of these content-dependent names that's based on a hash function. And then if you were to go to Limitation B, all it says is… Ms. Vreeland, isn't it also your view that if these added points were in the claims, they would still be abstractions? Yes, absolutely. Even if these purported improvements were in the claim, they would absolutely still be abstractions. The claims would do no more than improve the abstract process. But in addition to that, the claimed improvements they focus on just aren't in the claim. In this claim, you're simply comparing one of these content-dependent names to a plurality of values to decide if access should be provided or not provided. And if you look at the specification where it talks about the embodiment of this claim, which is in column 31, you're not even comparing these content-dependent names to all of the other content in the network. You're just comparing them to a licensing table. The only structure that this claim provides is taking a content-dependent name and comparing it to two other values in a table of license content and using that table of license content to decide whether access should be authorized or not. So, purely abstract and also doesn't capture any of the purported improvements. And again, it's column 31 of the patent, the top of column 31, that talks about this licensing table. I guess with my remaining time, I would turn quickly to the second step of the process, unless there are any other questions on ALICE Step 1. And I would just highlight for ALICE Step 2 that Personal Web focuses, again, on this use of content-based identifiers. But significantly, they don't claim that the mathematical algorithms used to create the content-based identifiers provide the inventive concepts. And they can't because the patents admit that these hash functions used to create the identifiers were old, well-known, and conventional. Instead, Personal Web focuses on the use of these content-based identifiers. It claims that this new use of an old technology provides the inventive concepts. And I would just highlight that that isn't enough to save the claims. Even if you were to consider the combination, even if you were to consider all of the elements in those claims together, they still amount to nothing more than applying the abstract idea on generic computer components with a known mathematical algorithm. And here, they can't claim that the fact that the claims reference this content-based identifier based on a hash function isn't enough to take them out of the abstract. And the court has been clear that you can't patent a mathematical algorithm. And the patents admit that the algorithms here are old. So, the claims do nothing more than apply the abstract idea using conventional and well-understood technologies. In the BSD case, this court emphasized that if a claim's only inventive concept is the application of an abstract idea using conventional and well-understood techniques, then the claim has not been transformed. So, we believe the district court correctly held that there were no inventive concepts either individually or in combination. Instead, the claim simply used the abstract ideas in a conventional way, again, just like the claim that this court found not patentable, and content extraction in IV versus Mantec, in smart systems, and in Bridge and Post. Thank you. Thank you. Mr. Hadley, you've got your rebuttal time remaining. Thank you, Your Honor. With these particular patents, the improvement to network functionality is almost the same as what we saw in the packet intelligence case. The invention is not the hash value itself, but many, many inventions that improve network functionality make use of identifiers. And that's true in packet intelligence, where they created an identifier called a flow signature, analyzed that flow signature against other flow signatures in a table, and then used the results to perform certain operations. And that was found to be patent eligible because it improved a network functionality. The same was true in the S-Tech versus Adobe case, where a key manager, a form of an identifier, was used to, quote, in the claim language, determine access authorization based on an object label. And that was used to improve network security, again, an improved functionality of the network itself, just like the claims at issue here. In contrast, cases like smart systems didn't improve network functionality. It simply used a bank card to gain access to mass transit. Nothing improved network functionality. Same was true in bridge and post, where the identifier was used to track users and deliver targeted media, such as advertisements. Again, no improvement in computer functionality or network functionality. And in the IV case, the same was true, where the identifier was used in connection with virus scanning, but there was no improved functionality of the network or even the virus scanner. It was simply conventional virus scanning. And I think the library analogy that Ms. Vreeland raised is particularly useful here, because it's undisputed that these patents don't simply computerize the duly decimal system. The invention here would be akin to taking every book in every library and randomly organizing them, shuffling them, not putting them with subject matter or even in numerical order, and then giving a librarian a random number and saying, you know, don't authorize that book, or eliminate all duplicates, or locate it based on just this number. And by the way, if there is a single word in the book that differs, then don't do any of these operations. That's the kind of improvement to the network functionality that is comparable to the library system. Why isn't this just an application of an algorithm, a well-known algorithm at that, to a non-generic computer and saying apply it? Because it changed the way that files are located and distributed across computer networks in a functionally improved way. It is a way that was hindering the development of the Internet when you had these diverse networks with different file management systems, different naming locations, and conventional names. There was a limit to how expansive the Internet could be with the conventional process. And what using the hash identifier here did was allow for that expansion that couldn't have happened otherwise. And that's exactly the kind of invention and network improvement that has been recognized in this court's cases such as packet intelligence and tech sec. Thank you, Mr. Hadley. I think we heard the buzzers. Thank you. Thank both sides, and the case is submitted. Thank you.